THE GOVERNOR AND COMPANY OF ADVENTURERS OF ENGLAND TRADING INTO HUDSON'S BAY v. HUDSON BAY FUR CO.

District Court, D. Minnesota, Fifth Division.
August 30, 1928.

Guy W. Kimball, of St. Paul, Minn., and H. S. MacKaye, of New York City, for plaintiff.

Toivonen & Harri, of Duluth, Minn., and W. M. Steele, of Superior, Wis., for defendant.

CANT, District Judge. The plaintiff corporation, dating back to the year 1670, has a distinct fame which probably goes farther back than that of any other well-known trading corporation on the North American continent. For more than two centuries, throughout the civilized world, it has borne a most enviable reputation for integrity and fair dealing, as one of the largest, if not the very largest and most successful, dealer in furs in existence. For a century or more last past it has been popularly known as the Hudson's Bay Company, or the Hudson Bay Company. Its trading operations, either directly or through others, have extended to every part of the world where furs have been the subject of trade among civilized men. Throughout the United States, since colonial days, and as that country has developed from time to time, and perhaps more

especially throughout the northerly part thereof, the good name and well-deserved fame of plaintiff company, and the reliable character of the merchandise which it has offered for sale to the public, have been practically everywhere known and recognized. This has been true as to any particular locality, whether plaintiff had an established place of business thereat, or whether at such place it offered its merchandise to the public through others, or whether at such place none of its merchandise was sold at all. Its position before the public has been altogether unique, and the name Hudson Bay, although territorial in its significance, has long been definitely identified in an unusually exclusive way with the plaintiff. The plaintiff company has dealt most extensively in furs, but for a great many years last past it has dealt also in specially high-grade blankets on an extensive scale, and its product, known as the Hudson Bay blanket, and bearing a special identifying device, is, and long has been, most favorably known throughout the world. In practically all the large cities of this country, and in many of the smaller cities thereof, plaintiff's products have been thoroughly well known and extensively bought and sold. By reason of the nature of such products, the dealing therein has been and is largely confined to cities of some considerable size, and usually does not extend to the smaller towns and villages of the country. Among the cities where the name of the plaintiff company has been recognized for a long time antedating the business career of defendant, and where during much of that time its products have been bought and sold and well known, is Duluth, in the state and district of Minnesota. By reason of its proximity to the Canadian border, many of its citizens from time to time visit points in Canada, where certain of the business establishments of plaintiff are located, and likewise various of the residents of Canada from time to time visit the city of Duluth.

During the year 1922, the defendant corporation was organized under the laws of the state of Minnesota, and shortly thereafter it opened a place of business on the principal business street of the city of Duluth aforesaid, as a dealer in furs and blankets, and ever since said date it has continued such business at the same place under the name Hudson Bay Fur Company. Said name is effectively displayed on the store front of the place where such business is carried on, and defendant has, during all the time since it began business in Duluth, advertised extensively as a dealer in furs and blankets under such name. It is in no way connected with plaintiff, and plaintiff has never consented to the use of such name by defendant.

There is an extensive literature in the law dealing with the question here involved. The general underlying principle is that "No man has a right to dress himself in colors or adopt and bear symbols to which he has no peculiar or exclusive right, and thereby personate another person for the purpose of inducing the public to suppose either that he is that person, or that he is connected with, or selling the manufacture of such other person while he is really selling his own." Croft and Day, 10 Jurist, New Series, 550.

Such acts manifestly involve questions somewhat similar to those involved in cases of unfair competition, and various of the general principles applying to such cases may properly be invoked here. Hanover Milling Co. v. Metcalf, 240 U. S. 403, 413, 36 S. Ct. 357, 60 L. Ed. 713; United Drug Co. v. Rectanus Co., 248 U. S. 90, 97, 39 S. Ct. 48, 63 L. Ed. 141.

It is upon the aforementioned principle that plaintiff relies, and, aside from the cases hereinafter mentioned, it relies upon the case of Buckspan v. Hudson's Bay Co. (C. C. A.) 22 F.(2d) 721, which, in the main, is persuasive here.

Defendant claims that plaintiff had abandoned the Duluth territory, and that there was no actual competition whatever at that place when it began business, and, as applicable to the circumstances here, it relies upon the cases of Hanover Milling Co. v. Metcalf, and United Drug Co. v. Rectanus Co., above cited.

Upon the particular claim last above mentioned, the case of Panhard et Levassor v. Panhard Levassor Motor Company, Limited, Law Reports, 2 Ch. 513 (1901), if followed, is a complete answer. The mere fact that in a particular place a plaintiff, which is a well and favorably known trading concern, does not actually have an established place of business, will not justify another in knowingly and in bad faith adopting the name of, and thereby holding himself out as, such plaintiff, or as connected therewith, and seek to profit by inducing the public to purchase his wares through the practice of such deception. A trading concern may have a well-earned and well-established reputation in a place where it has no established business location.

The cases of Hanover Milling Co. v. Metcalf, and of United Drug Co. v. Rectanus Company, are relied upon equally by plain-

tiff and defendant. In the opinion of the court, they support the plaintiff's claims. These cases are easily distinguishable from the situation here. The rules there promulgated were a necessary development of the law in the application thereof to cases where, in entire good faith, each of two persons or trading concerns, in widely separated areas, adopt the same name or device in the conduct of their respective business ventures, without either one knowing of the other, or of what is being done by him; and where considerable sums of money have been spent in developing the business of each, and a substantial measure of success by each has been achieved before either knew of the existence or activities of the other. The outstanding feature of such cases is that the second person or trading concern to adopt the name or device was in entire ignorance that the same name or device had previously been adopted by another in the same business, and that the second acted innocently and in good faith. The two authorities last above referred to thoroughly recognize the general underlying rule first above set forth, and then work out the necessary distinctions which must be made when the facts are such as were there before the courts.

The case at bar is in an entirely different class. The court will not go out of its way to censure the defendant or its promoters for what has been done. It is possible that they did not fully appreciate either the moral or the legal limitations which bound them under the circumstances with which we are here concerned. They, of course, should have known and appreciated such matters, and, of necessity, they are equally bound whether they did or not. Of necessity also, and as a matter of course, in the natural order of events, the use and display and wide advertising of the name Hudson Bay Fur Company by defendant and its promoters, by reason of its similarity to the popular name of plaintiff, would mislead and deceive the public. This was inevitable. No evidence whatever would be necessary in proof thereof. Such result would be matter of common knowledge. Practically everyone of general information would know that intuitively. It was certain under such circumstances that various patrons of defendant from time to time would be under the impression that they were dealing with a branch of plaintiff and that they were buying its merchandise. The sale of plaintiff's products was sure also to be injuriously affected, and its good name, wrongfully assumed by another, was sure to suffer. At least locally it would be in the keeping of the defendant and dependent on its conduct. This was usurpation. It was a move without right to step into the shoes of the plaintiff and to reap the benefit which was sure to come therefrom. The circumstances attending the selection of the name here were entirely different from those under which the selections were made in the Hanover Milling Co. and the United Drug Co. Cases. Here, with full knowledge of plaintiff and its activities, the name was deliberately adopted, because it was thought that it would be a great name under which to do business, if by any possibility its use should be allowed. To use an exceedingly mild expression, such action on the part of defendant was highly unethical, and should cease. A deliberate attempt to deceive, however, is not a necessary element of such cases. Federal Trade Commission v. Balme (C. C. A.) 23 F.(2d) 615, 621.

No one wishes to force the promoters of defendant out of business. Presumably they are able to succeed by the use of legitimate means. There are plenty of names from which to choose. Because of the manifest injustice, whether intended or not, in making use of the name which it has employed, such use by defendant should be discontinued, and this will be the effect of the decree to be entered herein.

Plaintiff has waived its claim to damages and to an accounting, and the decree will therefore be limited to an injunction awarding proper relief of that character.