**FOX FUR CO., Inc., et al. v. FOX FUR CO., Inc., et al.**

**Civ. No. 497.**

District Court, D. Delaware.

March 23, 1945.

Atwood C. Wolf, of Jersey City, N. J., and Caleb R. Layton, 3rd (of Hastings, Stockly and Layton), all of Wilmington, Del., for plaintiffs.

Philip Cohen, of Wilmington, Del., for defendants.

LEAHY, District Judge.

■ 1. The conclusion[1] is defendant's use of the words "Fox Fur" in its corporate name, and the use of the same and similar terms in its advertising, are likely to mislead purchasers or prospective purchasers of furs in Delaware into supposing that the furs of the defendant are, in fact, the furs advertised and dealt in by the plaintiffs. That no person was actually mislead is irrelevant, since injunctive relief is granted to prevent threatened or prospective injury.[2] The persons who organized and own defendant company could only have been motivated in adopting the word "Fox," as part of defendant's corporate name, by knowledge of the established and successful business of plaintiff and they must have intended to benefit by the inclusion of this word in the corporate name which they selected at the expense of plaintiff I. J. Fox, Inc. This conclusion is re-enforced by the disingenuous theory of defendant that the name is adopted because of an actual specialization in the sale of fox furs, viz., the fur of the fox. The statements of the affiants do not support any real specialization in the use of the word "Fox" in defendant's corporate or trade-name and manifestly such use is not a prerequisite to the successful retailing of the fur of the fox. This is so obvious any court would take judicial notice of the

fact. The conclusion is, then, defendant deliberately pirated the name and good will of plaintiff.

■ 2. Facts stated in the pleadings and affidavits are substantially similar to the facts found by Judge Coleman in disposing of the case of Fox Fur Co., Inc., et al. v. Fox Fur Co., Inc., D.C.Md., 59 F. Supp. 12.[3] In that case, Judge Coleman concluded the defendant before him was guilty of unfair competition and should be enjoined from using the particular corporate or trade-name (which is the same as defendant's in the case at bar) unless there was added as a prefix to such corporate name some descriptive word or words which would clearly indicate that it is the thing, i.e., the fur of the fox, and not some person or persons or other company identified with a business having the name "Fox" that is referred to. Getsos and Dranow are prominently mentioned in the Maryland case. It may be that they are the principal privies to all the defendant Fox Fur Companies. While it might be argued that the decision of the Maryland District Court is res judicata (See Coca Cola Co. v. Pepsi-Cola Co., 6 W.W.Harr. 124, 172 A. 260; Saxlehner v. Eisner, 2 Cir., 147 F. 189, affirmed 2 Cir., 140 F. 938, certiorari denied 203 U.S. 591, 27 S.Ct. 778, 51 L.Ed. 331; Terminal Barber Shops v. Zoberg, 2 Cir., 28 F.2d 807), we prefer, on the present motion for preliminary injunction, not to follow the Maryland case on the theory of res judicata. For present purposes, it is followed on the basis of stare decisis. While there is no need to repeat, here, the able discussion of the legal principles enunciated by Judge Coleman, the same principles which were applicable there, are just as apposite to the present but slightly different factual situation.

---

[1] While the present matter arises on a motion for a preliminary injunction and such a motion must be determined on the pleadings and affidavits, the affidavits in support and in opposition raise no substantial questions of conflict of fact.

[2] Since Delaware law is not inconsistent with federal law on these questions, it is unnecessary to consider to what extent Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, requires the application of local law in these situations. Cf. Standard Oilshares v. Standard Oil Group, 17 Del. Ch. 113, 150 A. 174; American Radio Stores v. American Radio & Television

Stores Corporation, 17 Del.Ch. 127, 150 A. 180. For a comprehensive discussion of this and allied matters see Zlinkoff, Erie v. Tompkins: In Relation to the Law of Trademarks and Unfair Competition (1942), 42 Col.Law Rev. 955, 974 to 990; Monopoly v. Competition, 53 Yale Law Journal 514, 542, 549.

[3] As the facts in the case at bar are so strikingly similar to Fox Fur Co., Inc. v. Fox Fur Co., Inc., D.C.Md., 59 F.Supp. 12, it is difficult to escape the charge of judicial plagiarism when the present opinion is read over Judge Coleman's.

**3.** There are two essentials in the protection of a trade-mark—in this or its related case in Maryland—in an unfair competition case. First, "name" must acquire such secondary meaning or significance as to identify plaintiff or some particular attribute of its product; Best Foods, Inc., et al., v. General Mills, Inc., D.C.Del., 3 F.R.D. 459, Id., D.C., 59 F. Supp. 201. Second, defendant must have unfairly used it, or a simulation of it, as respects plaintiff. If these prerequisites exist, then defendant's motive, except insofar as it may affect the extent of allowable damage, is immaterial. McGraw-Hill Pub. Co. v. American Aviation Associates, 73 App.D.C. 131, 117 F.2d 293; S. S. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978; Brooks v. Great Atlantic & Pacific Tea Company, 9 Cir., 92 F.2d 794; R. H. Macy & Co. v. Macy Drug Store, 3 Cir., 84 F.2d 387; Wall v. Rolls-Royce, 3 Cir., 4 F.2d 333. In the last case cited this Circuit held that the district court, sitting as the Chancellor, is always justified in preventing a defendant from veiling his business under the name of another where he has and can have but one object in view, namely, to commercially use as his own a commercial asset that is another's, the continued use and abstraction of which is so fraught with such possibilities of irremediable injury that the only way to remedy it is to stop it at the start. This is simply traditional equity. Relief, at bottom, may be had in this type of case even though plaintiff's and defendant's goods may be so different in quality as not to be competitive; and whether or not the infringing company is actually doing business in the territory where relief is sought is not a requirement for granting such relief. Phillips v. Governor & Co., etc., 9 Cir., 79 F.2d 971; Governor and Co., etc., v. Hudson Bay Fur Co., D.C.Minn., 33 F.2d 801; Buckspan v. Hudson's Bay Co., 5 Cir., 22 F.2d 721; Finchley v. Finchley Co., D.C.Md., 40 F.2d 736.

**4.** Defendant relies upon cases such as Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, and Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598, 9 S.Ct. 166, 32 L.Ed. 535, for the proposition that, since no one has the exclusive right to the use of a generic term as a trade-name, no injunction should issue. This argument fails to meet the point under discussion. Plaintiffs are not asking to establish a right to exclusive use of the trade-name of a product. They are not seeking to exclude defendant from the retail fox fur or general fur business. Plaintiffs simply claim defendant should not be allowed to use the common noun "fox" in any way so as to suggest the proper name "Fox". Their position is well taken.

An injunction should issue enjoining defendant from using its particular corporate or trade-name, unless there is added as a prefix some descriptive word or words which would clearly indicate that it is the thing, i.e., "the fur of the fox," and not some person or persons or other company identified with the business having the name "Fox" that is referred to. The exact form which defendant's modified trade-name must take will await submission of a form of decree.