**660**

ORCHARD BROTHERS, Inc.,
Plaintiff,

v.

Charles RUDIN, doing business as A.B.C.
Aluminum (Awning) Com-
pany, Defendant.

Civ. No. 5472.

United States District Court
N. D. New York.

April 26, 1955.

Irving Vichness, New York City, for plaintiff.

Andros & Smith, Albany, N. Y., Harry A. Smith, Albany, N. Y., of counsel, for defendant.

FOLEY, District Judge.

Plaintiff moves for a preliminary injunction pending the trial of this action. The action is one based upon alleged trade-mark infringement and unfair competition. The application to enjoin specified business activity on the part of the defendant, and the particular use of the trade-mark "Ro-La-Lume", is based upon the pleadings, affidavits and exhibits. Affidavits and exhibits have been submitted in behalf of the defendant in opposition. On the return day of the motion, near the end of lengthy argument, it was indicated by the attorney for the plaintiff that agreement might be reached by the parties if the defendant would agree not to "palm off" its product as that of the plaintiff on the distributors and dealers of the plaintiff, and that judicial determination of the motion might be unnecessary. Apparently, the spirit of compromise, which is always pleasant to a court, faded away and the motion is now pressed.

The plaintiff is the manufacturer of the component parts of a roll-up aluminum awning. Through a system of national franchise holders, trained and supervised by plaintiff's employees and by a combination of their efforts, the assembly of the awning is made for the retail dealers and/or the ultimate individual customer. This aluminum awning was manufactured and sold under a patent which expired November, 1954. In 1945 the plaintiff adopted the name "Alumaroll" for its trade-mark in connection with the component parts and complete awning. Federal registration of such mark was granted January 16, 1951. The trade-mark "Alumaroll" was used by the plaintiff in distinctive fashion in its advertising in the leading national magazines and trade journals, the letters "Aluma" in black, the letters "Roll" in white, with a clever backward sweep from these let-

ters to give a rolling effect; all as appear in the exhibits submitted herein, upon a red background.

When the patent expired, the defendant entered the field. Its circular advertising adopted the mark "Ro-La-Lume", hyphenated and so set forth at the top of the circular with the statement at the bottom in large and readable lettering: "A Product of A.B.C. Awning Company, Albany, New York." There was some similarity of the first circular with the details of previous advertising by the plaintiff, but the defendant says that few of the original circulars were released, and the format has been changed. (Defendant's Exhibits H, I.) However, the plaintiff urges in its brief that it does not rely upon any similarity or closeness of the mark alone, but insists that the combination of the acts of the defendant in trying to convince the distributors and dealers of the plaintiff to "palm off" its awning, described as inferior by the plaintiff, and the use of similar parts catalogs, price lists and technical manuals, all add up to an evil that will irreparably harm the business of the plaintiff unless restrained by the drastic relief of injunction.

The affidavits, as usual, are in conflict on these charges by the plaintiff. There is no exact proof whatever that the defendant is manufacturing an inferior awning, and I am sure that at this stage and based upon the papers submitted, any such conclusion would be completely unjustified. There is serious disagreement as to whether the distributor of the plaintiff contacted the employee of the defendant, or vice versa, and denial that there was discussion of "palming off" the product of the defendant for that of the plaintiff. There is serious question as to whether or not the parts of the Ro-La-Lume awning are interchangeable with that of "Alumaroll". All these factual disputes, and probably others, should await a trial upon the merits. General Electric Company v. Schwartz, D.C., 92 F.Supp. 966.

More important is the lack of a clear showing that there is existent under the circumstances present the likelihood of consumer-confusion in the marketing of the two products, or that irreparable injury will come to the plaintiff if injunctive relief is denied. Injunctions are a most drastic remedy, and cannot be based upon speculative fear that primarily arises from the justified faith and pride in a good product. Further, it is difficult to believe that the awning of the defendant could be "palmed off" on the trained distributors or dealers of the plaintiff without their connivance.

The case relied upon by the plaintiff, Hamilton Watch Co. v. Benrus Watch Co., 2 Cir., 206 F.2d 738, 739, involved an anti-trust action and it must be remembered that trade-mark and unfair competition cases are of a peculiar kind. In the Hamilton case, at page 743, the Court stated: "Here no substantial harm from the injunction to defendant is perceptible; but the hardship to plaintiff, were there no injunction, would be very considerable." That statement does not fit here because the injunction would stop the new venture dead in its tracks, and it is difficult for me to conclude that this experienced organization of the plaintiff cannot stand off this new thrust until a trial upon the merits, which can be had in the next two months.

In another case relied upon by the plaintiff, Model-Etts Corporation v. Merck & Co., D.C., 118 F.Supp. 259, 261, the injunction was denied by Judge Dimock stating: "What I must conclude, however, is that plaintiff has not supplied evidence of danger of irreparable injury to plaintiff or shown facts from which that result can be inferred. In the absence of such evidence and such a showing the issuance of a temporary injunction cannot be justified."

Some showing of likelihood of confusion is just as necessary and must be present. Federal Telephone & Radio Corporation v. Federal Television Corp., 2 Cir., 180 F.2d 250, 251. The element of a "free ride" does not warrant the issuance of the injunction in the absence of a patent monopoly or clear proof of a

"secondary meaning". An important factor is conduct that will cause confusion to the customer as to the source of the product. Charles D. Briddell, Inc., v. Alglobe Trading Corp., 2 Cir., 194 F.2d 416.

The motion is denied. Submit order accordingly.